UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CONNIE L. SCHRIDDE,

                    Plaintiff,

v.                                                      Case No.  5:06-cv-1-Oc-10GRJ

LINDA S. McMAHON[1], Acting Commissioner of
Social Security,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION[2]

        Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying his application for a period of disability and

disability insurance benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 10) and

both parties have filed briefs outlining their respective positions.  (Docs. 13 & 16.)  For

the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I.  PROCEDURAL HISTORY

        On May 27, 2003, Plaintiff protectively filed an application for a period of disability

and disability insurance benefits claiming a disability onset date of July 6, 2001 (R. 65-

67.)  Plaintiff's application was denied initially (R. 45-46), and upon reconsideration. (R.

_____

        [1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security.
Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be
substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further
action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social
Security Act, 42 U.S.C. § 405(g).

        [2] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local
Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely
objections shall bar the party from a *de novo* determination by a district judge and from attacking factual
findings on appeal.

42-43.)  Thereafter, Plaintiff timely pursued her administrative remedies available before

the Commissioner, and requested a hearing before an Administrative Law Judge

("ALJ"). The ALJ conducted Plaintiff's administrative hearing on July 22, 2005 (R. 344-

365) and issued a decision unfavorable to Plaintiff on August 22, 2005. (R.10-17.)  The

Appeals Council denied Plaintiff's request for review on November 4, 2005 (R. 3-5.)  On

January 4, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

 evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.[5] The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision.[6] However, the

---

[3] See 42 U.S.C. § 405(g).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[6] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from
(continued...)

district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

---

[6](...continued)
evidence on which the Commissioner relied).

[7] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

[12] 20 C.F.R. § 404.1520(c).

disabled.[13] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[14] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[15]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[17] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[18]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[17] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[18] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

exertion.[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[23]

## III. SUMMARY OF THE EVIDENCE

Plaintiff was born on October 13, 1960 and was forty-four (44) years old at the time of the hearing. (R. 347.) Plaintiff has a General Equivalency Degree ("GED") (R. 348) and has past relevant work history as a restaurant server, a convenience store clerk, a motel maid, and a grocery store cashier. (R. 349-353.) Plaintiff contends that she has been unable to work since July 6, 2001, due to lower back pain. (R. 353-354.)

---

[19] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[20] Walker at 1003.

[21] Wolfe at 1077-78.

[22] See id.

[23] See Doughty at 1278 n.2.

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that Plaintiff suffers from degenerative disc disease of the lumbar spine, small central disc protrusions at L4-L5 and L5-S1, and as of July 6, 2001, she had a moderate sized disc extrusion at L4-L5 impinging the right L5 nerve root and lateral recess.  (R. 16.) The ALJ determined that Plaintiff was not capable of performing her past relevant work but that she retained the residual functional capacity (RFC) to perform a full range of sedentary work. (R. 16.)

Plaintiff suffered from a lower-back injury on July 6, 2001. (R. 348.) Plaintiff was seen at Express Care on July 8, 2001 for complaints of back strain, at which time Plaintiff was prescribed Naprosyn and Robaxin for the pain. (R. 124) On July 24, 2001, Plaintiff returned to Express Care with complaints of back pain. She was diagnosed with low back pain with radiculopathy. Plaintiff was instructed to continue her pain medications and take deep massage and use hot or cold packs.

On August 1, 2001, Plaintiff treated with Dr. Wayne Poole for a lumbar spine MRI scan that revealed a right parasagittal disk herniation which contacted and deformed the anterior aspect of the thecal sac, but caused no significant narrowing of the central canal or the neural foramina, and a small focal central disk herniation at L5-S1 with no narrowing of the central canal or neural foramina. (R. 126.)

Plaintiff was examined by Dr. Antonio DiScalfani on August 27, 2001 for complaints of back pain going into her right buttock and occasionally down her right leg with numbness and tingling into her right foot. Plaintiff reported minimal pain relief through physical therapy. On examination, straight leg raising and hyper-extension

caused back and buttock pain. Dr. DiScalfani's impression was L4-L5 disc herniation, eccentric to the right. Dr. DiScalfani recommend continued physical therapy. (R. 169.)

Plaintiff returned to Dr. DiScalfani on November 4, 2002 and reported no improvement in her back and leg pain, which Plaintiff reported was caused by any activity. Plaintiff was continued on muscle relaxers and anti-inflammatory medication. Dr. DiScalfani opined that Plaintiff had reached maximum medical improvement without surgery and recommended that Plaintiff undergo surgery. (R. 167.)

On May 4, 2003 Plaintiff returned to Dr. DiScalfani and reported that her leg pain had improved, but that her back pain was still severe. An updated MRI scan of the lumbar spine showed shrinkage of the disc, but that Plaintiff still had considerably decreased active range of motion in her back. Dr. DiScalfani opined that because her leg pain had improved, Plaintiff was no longer a candidate for surgery, but Dr. DiScalfani thought Plaintiff would benefit from spinal strengthening. (R. 162-163.)

On September 17, 2003, after approximately eight weeks of spinal strengthening, Plaintiff's range of motion was noted as improved but that her strength was still below normal.  Plaintiff reported she continued to experience back pain but that she was no longer taking medications. Plaintiff was authorized to continue with spinal strengthening for an additional four weeks. (R. 153.)

On May 8, 2003, Plaintiff received an updated MRI at Radiology Associates of Ocala, P.A., the results of which were L4-L5 degenerative disc disease, and no disc protrusion, foraminal narrowing or spinal canal stenosis. (R. 170.)

Dr. Edward Demmi performed a consultative physical examination of Plaintiff on September 19, 2003. Plaintiff reported that despite doing back stretching exercises, she

7

still experienced intermittent, sharp, low back pain over the right side which radiated to the buttock and the right lower extremity. Plaintiff advised that lying down with her feet elevated relieved the pain. Plaintiff was taking Robaxin and Ultram. Upon examination, Plaintiff had a full range of motion in the thoracolumbar spine on forward flexion and extension. Lateral flexion and rotation was slightly reduced at 25 degrees. Plaintiff's motor, sensory and reflex findings were normal, as was her gait. Plaintiff walked without assistance.  Plaintiff had normal grip strength and fine manipulations and no motor deficits to the upper or lower extremities.  (R. 171-174.)

Dr. Terry T. Rees reviewed the medical evidence and concluded that Plaintiff retained the RFC to perform light exertional work and that Plaintiff could lift and carry from 10 to 20 pounds, sit, stand or walk about 6 hours in an 8-hour workday. Dr. Rees found that Plaintiff had no limitations with climbing, balancing, stooping, kneeling, crouching or crawling. (R. 175-182.)

On May 12, 2004, Plaintiff went to the Ocala Orthopaedic Group with complaints of low back pain and right lower extremity pain. Plaintiff stated that she had 100 percent pain in her back and 10 percent pain in her leg. (R. 193.) A number of diagnostic tests were ordered including another lumbar spine MRI scan which showed small central disc protrusions at L4-L5 and L5-S1 with the protrusion at L5-S1 not displacing the S1 nerve root. Mild paraspinal muscle atrophy was demonstrated. Dr. Troy Lowell examined Plaintiff on June 2, 2004, the physical findings of which were unchanged from the previous exam. Dr. Lowell diagnosed Plaintiff with degenerative disc disease of the lumbar spine and recommended surgery. (R. 183-184.) Although Plaintiff continued with physical rehabilitation, the rehabilitation was interrupted due to a breast augmentation

surgery. On March 18, 2005, Plaintiff complained of increased pain after weeding her garden. (R. 201-202.)  At an April 15, 2005 visit with Dr. Amy Clunn, Plaintiff reported that the overall trend of her symptoms had improved but that she still experienced pain with activity. Plaintiff reported no new symptoms. Plaintiff reported that her home exercise program had been helpful. (R. 199-200.)

Dr. Clunn, Plaintiff's physical rehabilitation doctor, completed an assessment of Plaintiff's physical functional capacities on April 15, 2005. Dr. Clunn opined that Plaintiff can occasionally lift 10 pounds, can sit for about 6 hours and stand and walk for less than 2 hours.  After 45 minutes of sitting, Plaintiff needs to change position. After 15 minutes of standing, Plaintiff needs to change her position. Plaintiff needs to walk around for up to 5 minutes every hour and needs to be able to shift her position at will. Plaintiff will occasionally need to lie down during a work shift. Plaintiff can occasionally twist, bend or climb, but she must never crouch or climb ladders.  Pushing or pulling affects her lumbar spine and would be affected by her impairments. Plaintiff can reach, handle, finger and feel without restriction. On the average, Dr. Clunn found Plaintiff's impairments would cause her to be absent from work less than once a month. (R. 234-236.)

An updated lumbosacral MRI scan on July 1, 2005 showed a new right paracentral moderate sized disc extrusion at L4-L5, impinging the right L5 nerve root and lateral recess. The posterior disc protrusion at L5-S1 did not appear significantly changed since the prior examination. (R. 241.) On June 20, 2005, Plaintiff was using a single-point cane for assistance (R. 239-240), but on July 7, 2005, her gait and station

were reported as normal and unassisted. Plaintiff was able to toe and heel walk indicating functional distal strength. (R. 237-238.)

The ALJ found that the objective medical evidence established that as of July 6, 2001, Plaintiff had the following medically determined severe impairments: degenerative disc disease of the lumbar spine, small central disc protrusions at L4-L5 and L5-S1. As of July 1, 2005, Plaintiff had a moderate sized disc extrusion at L4-L5 impinging the right L5 nerve root and lateral recess. However, her impairments considered alone or in combination were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. 14.)

The ALJ then made the determination as to whether Plaintiff retained the RFC to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy. In making this assessment, the ALJ considered all symptoms, including pain and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. The ALJ also applied the Eleventh Circuit pain standard because Plaintiff asserted disability through testimony of pain. (R. 14.)

The ALJ found that Plaintiff's testimony of disabling pain "less than fully credible." (R. 14.) The ALJ stated that the "diagnostic medical evidence indicates that she has degenerative disc disease of the lumbar spine and that, with physical therapy and spine strengthening exercises, she improved her condition." (R. 14.) The ALJ noted that initially Plaintiff was taking Robaxin and Ultram for pain control, but by September 17, 2003, she was not taking any medications. Plaintiff "complained of increased pain on March 18, 2005 following elective breast augmentation surgery and after weeding her

garden the week before." Her activities of daily living include "cooking, washing the dishes, taking care of her dogs, visiting with neighbors, and watching television." (R. 14., R. 356-361.)

After considering Plaintiff's testimony with respect to the medical evidence, the ALJ found that Plaintiff's "assertions of disabling impairments are not supported by the objective medical evidence to the extent alleged, and they are inconsistent with her activities of daily living." (R. 15.)

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required only occasionally and other sedentary criteria are met. The ALJ found that Plaintiff retains the RFC to sit from 6-8 hours in an 8-hour workday and stand or walk for 2-3 hours. The ALJ found that Plaintiff can lift and carry from 10 to 15 pounds and that her symptoms of pain and depression do not preclude the performance of activities of daily living that include caring for her own hygiene, cooking, washing dishes, laundry, shopping, driving a car, cooking and attending physical therapy.

After considering all of the evidence in the record together with Plaintiff's activities of daily living, the ALJ found that Plaintiff is precluded from the performance of her past relevant jobs, as she described them, but "retains the residual functional capacity to perform a full range of unskilled sedentary work activities" (R. 15) and therefore was not disabled.

# IV.  DISCUSSION

Plaintiff frames her argument focusing upon the ALJ's determination with regard to the ability to perform past relevant work. The Plaintiff suggests that the ALJ erred at Step 4 of the sequential analysis by concluding that Plaintiff could return to her past relevant work. As explained below this argument is completely without merit and is based upon a completely contrary reading of the decision by the ALJ.  Notwithstanding the fact that the Plaintiff completely misidentifies the issue in this case, Plaintiff goes on to argue that the ALJ failed to engage in the proper pain analysis and failed to evaluate properly the combined effect of Plaintiff's pain with the other impairments. Lastly, Plaintiff argues that the ALJ erred in his residual functional capacity analysis by failing to consider Plaintiff's pain and without stating the weight given to Dr. Clunn's opinion, Plaintiff's treating physician.

For the following reasons, the Court disagrees and concludes the ALJ made a proper RFC credibility determination of Plaintiff's subjective complaints of pain, properly evaluated the combination of Plaintiff's impairments and properly considered the testimony of Dr. Clunn.

## A.    The ALJ Did Not Find That Plaintiff Could Perform Her Past Relevant Work.

As a starting point, the Plaintiff's assertion that "the ALJ erred by finding Schridde able to perform her past relevant work," is simply wrong and completely misreads the decision by the ALJ. To the contrary the ALJ found that Plaintiff could *not* perform her past relevant work. The ALJ stated that Plaintiff's "past relevant jobs as a restaurant server, a convenience store clerk, a motel maid, and a grocery store cashier all required

performance of work-related activities precluded by her residual functional capacity."[24]

Accordingly, Plaintiff's argument has no merit whatsoever and is due to be rejected

summarily.

**B.      The ALJ Applied The Correct Legal Standards And The Substantial Evidence Supports The ALJ's RFC Analysis That Plaintiff Could Perform Sedentary Work**

Plaintiff next argues that the ALJ failed to consider properly Plaintiff's pain and

failed to consider Plaintiff's pain in combination with her other impairments.

The law is well settled that in evaluating disability, the ALJ must consider all of a

claimant's impairments, including her subjective symptoms, such as pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.[25]  The Eleventh Circuit has set forth a three-part

test for determining when a disability may be established based on subjective

complaints of pain.[26]  The "pain standard" requires that the plaintiff first produce medical

or other evidence of an underlying medical condition.  Then the plaintiff must

demonstrate either that objective medical evidence confirms the severity of the alleged

pain arising from that condition or that the objectively determined medical condition is of

such a severity that it can be reasonably expected to give rise to the alleged pain.[27]

"Pain alone can be disabling, even when its existence is unsupported by objective

---

[24] R. 16.

[25] 20 C.F.R. § 404.1528.

[26] Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

[27] Id.

13

evidence."[28]  However, a claimant's subjective complaints of pain do not conclusively establish a disability unless accompanied by medical evidence.[29]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[30]  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[31]

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[32]  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[33]

---

[28] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[29] 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms *shall not alone be conclusive evidence of disability* as defined in this section; there *must* be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability") (emphasis added).

[30] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[31] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[32] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[33] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

In the instant case, the ALJ cited the exact language of the Eleventh Circuit's pain standard "threshold"[34] assessment and applied it to Plaintiff's subjective complaints of "low back pain."  (R. 12.)

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing an underlying medical condition, degenerative disc disease of the lumbar spine, small central disc protrusions at L4-L5 and L5-S1, and as of July 1, 2005, a moderate sized disc extrusion at L4-L5 impinging the right L5 nerve root and lateral recess (R. 16), that could be expected to give rise to the complaints of pain.  Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's complaints regarding disabling pain were "less than fully credible,"[35] stating that considering Plaintiff's testimony with respect to the objective medical evidence, Plaintiff's "assertions of disabling impairments are not supported by the objective medical evidence to the extent alleged, and they are inconsistent with her activities of daily living."[36] The ALJ concluded that Plaintiff's allegations were "simply not supported by the objective medical signs and laboratory findings of the record..."[37]

In particular, the ALJ discussed the medical opinions, including the medical source statement of Dr. Amy E. Clunn - one of Plaintiff's treating physicians - when finding that Plaintiff could perform sedentary work. For example, the ALJ discussed that even though August 2001 and October 2002 MRI's revealed degenerative disk disease

---

[34] Marbury, 957 F.2d at 839.

[35] R. 14.

[36] R. 15.

[37] R. 17.

in the lumbar spine, Plaintiff subsequently in May 2003 reported to Dr. DiScalfani that her leg pain had improved. Based upon Plaintiff's report that she was improving and the fact that a more recent May 2003 MRI showed shrinkage of the disc, Dr. DiScalfani concluded that Plaintiff was no longer a surgical candidate and that spinal strengthening exercises were sufficient to address the condition.  Further, the ALJ noted that by June 2003 Plaintiff reported her pain was tolerable and the results of a physical exam at that time revealed that Plaintiff's motor strength was 5/5 in all extremities and that the straight leg raising test was negative. (R. 159.) By September 2003 Plaintiff's range of motion had improved such that Plaintiff was no longer taking any pain medication. (R. 153.)

In addition to discussing the medical evidence from Dr. DiScalfani, the ALJ also discussed the physical examination by Dr. Demmi. Notably, Plaintiff reported that physical therapy was working, the low back pain was intermittent and that her pain was not increased with activity. (R. 171.) Moreover, the physical examination performed by Dr. Demmi was essentially normal. (R. 173-74.)

As part of the ALJ's RFC analysis the ALJ further discussed Plaintiff's treatment with Dr. Troy Lowell - which evidenced disc protrusions only slightly more pronounced than those on the prior May 2003 MRI.

The ALJ went on to discuss Plaintiff's treatment records with Dr. Clunn prior to the April 2005 Medical Source Statement, which do not support all of Dr. Clunn's findings in the April 2005 report. As noted by the ALJ, Dr. Clunn's medical records prior to the April 2005 medical source statement evidence that Plaintiff had good functional distal strength and a normal gait and station that she did not require an assistive device

16

to walk. Prior to April 2005 the only time Dr. Clunn placed restrictions on Plaintiff was on December 2, 2003, when Plaintiff was restricted to lifting over thirty pounds and from repetitive bending, neither of which would preclude Plaintiff from engaging in sedentary work. The treatment records from Dr. Clunn from December 2003 through April 2005 evidence that Plaintiff's condition was unchanged during this time period and that there was no drastic deterioration in Plaintiff's condition from the December 2003 restriction to lifting thirty pounds and restriction from repetitive bending.

In sum, the ALJ thoroughly analyzed all of this medical evidence as part of his RFC analysis and as part of his assessment of Plaintiff's subjective complaints of pain. The ALJ concluded that despite the fact that Plaintiff experienced some pain Plaintiff's allegations of the intensity and persistence of pain were not supported by the medical evidence. Further, although the medical evidence discloses that Plaintiff was offered surgery it was never required and instead Plaintiff was treated conservatively through medication and physical therapy.

Finally, the ALJ noted that Plaintiff's activities of daily living, including such things as cooking, washing the dishes, taking care of her dogs, and visiting with neighbors was also inconsistent with her allegations of disabling pain.

Accordingly, the Court concludes that the ALJ properly evaluated, considered and discussed Plaintiff's level of pain and the substantial evidence of record more than amply supports the ALJ's conclusion that the Plaintiff's assertions of disabling impairments were not supported by the medical evidence.

In addition to arguing that the ALJ's pain analysis was flawed, Plaintiff suggests that even if Plaintiff's pain was not severe on its own, that the ALJ, nonetheless, erred

17

by failing " to evaluate the combined effects" of Plaintiff's impairments by "simply rejecting" Plaintiff's pain testimony. This argument has no merit. Even though Plaintiff has failed to specify which alleged impairments the ALJ did not consider in combination, a review of the ALJ's decision discloses that the ALJ utilized the correct legal standard and properly considered Plaintiff's impairments in combination as part of the sequential analysis.

Where a claimant alleges several impairments, the ALJ "has a duty to consider the impairment in combination and to determine whether the combined impairments render the claimant disabled."[38]  In the instant case, after considering all of the objective medical evidence, the ALJ expressly found at step three that Plaintiff's "impairments considered alone or in combination were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."[39] The Eleventh Circuit has made clear that language like this in the ALJ's decision stating that the ALJ has considered the claimant's impairments in combination are sufficient to evidence that the ALJ indeed considered the combined effects of Plaintiff's impairments.[40]

---

[38] Jones v. Dept. of Health and Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991.)

[39] R. 14.

[40] See Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002); Jones v. Dept. of Health and Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (holding that ALJ's finding that claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" was evidence that the ALJ considered the combined effects of claimant's impairments.); Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (holding that statement by ALJ that claimant was not suffering from any "combination of impairments of sufficient severity" was sufficient to conclude that the ALJ considered the combined effect of the claimant's impairments.).

Lastly, with regard to the analysis of Plaintiff's pain, she argues that the ALJ "failed to discuss or state the weight given to" Dr. Clunn's medical opinion regarding Plaintiff's "chronic and severe pain" and that Dr. Clunn found that Plaintiff was "disabled."

However, a close examination of Dr. Clunn's April 2005 medical source statement (R. 234) discloses that Dr. Clunn never opined that Plaintiff was either "disabled" or that Plaintiff "could not perform full-time sedentary work." Rather, Dr. Clunn found that Plaintiff could occasionally lift 10 pounds, can sit for about 6 hours and stand and walk for less than 2 hours. Further, Dr. Clunn found that after 45 minutes of sitting, Plaintiff needs to change her position, she needs to walk around for 0-5 minutes every hour and she needs to be able to shift her position at will. Dr. Clunn's medical source statement states that Plaintiff occasionally will need to lie down during a work shift and occasionally can twist, bend, or climb stairs; but she must never crouch or climb ladders. Moreover, although Dr. Clunn noted that pushing or pulling affects Plaintiff's lumbar spine and would be affected by her impairments, Plaintiff can reach, handle, finger and feel without restriction. Lastly, Dr. Clunn's medical source statement noted that on average, Plaintiff's impairments would cause her to be absent from work less than once per month.[41] Thus, contrary to Plaintiff's argument Dr. Clunn did not opine that Plaintiff could not perform sedentary work and indeed the only notation in her opinion that arguably could be considered inconsistent with an RFC for sedentary work, was her notation that sitting is limited to less than two hours.

---

[41] R. 234-236.

Sedentary work requires that Plaintiff have the ability to lift no more than 10 pounds at a time and occasionally lift or carry articles like docket files, ledgers, and small tools. Jobs are sedentary if walking and standing are required occasionally and "occasionally" means occurring from very little up to one-third of the time. Sitting would generally total about 6 hours of an 8-hour workday.[42]

Dr. Clunn's medical source statement is generally consistent with a finding that Plaintiff can perform full time sedentary work[43] and there is nothing in Dr. Clunn's medical records before the April 2005 medical source statement suggesting that Plaintiff's restrictions would preclude her from performing sedentary work. Dr. Clunn opined that Plaintiff could lift and carry no more than ten pounds, that she could sit with breaks for about six hours a day, and that she could stand and walk for less than two hours. Thus, because Dr. Clunn opined that Plaintiff could sit for about six hours, Plaintiff would generally be considered to have the ability to do sedentary work.

As discussed above, Dr. Clunn's medical records of her treatment of Plaintiff from at least December 2003 to April 2005 do not disclose any restrictions by Dr. Clunn, which would preclude Plaintiff from performing a full range of sedentary work. In addition to discussing Dr. Clunn's medical records, the ALJ thoroughly discussed the medical records from Dr. DiScalfani and Dr. Demmi, which also do not suggest any restrictions precluding Plaintiff from performing a full range of sedentary work.

---

[42] SSR 96-9

[43] While the ALJ found that Plaintiff can lift from 10-15 pounds and can stand/walk for 2-3 hours, a finding slightly inconsistent with Dr. Clunn, the plaintiff does not argue this is reversible error in view of the fact that an RFC of sedentary work does not require Plaintiff to lift more than 10 pounds or stand/walk for more than 2 hours.

Accordingly, while the ALJ did not expressly state the weight he gave to Dr. Clunn's medical opinions he was not required to do so because Dr. Clunn's medical records prior to April 2005 were consistent with the ALJ's findings, and other than the ability to sit for less than two hours, the ALJ's RFC was consistent with the other findings in Dr. Clunn's April 2005 medical source statement. Where, "[t]he medical evidence is consistent, the ALJ is not required to state the weight attributed to each opinion."[44] Further, where the medical evidence, including the medical evidence from a treating physician, is consistent the "ALJ need not determine whether a treating physician's opinion is entitled to either controlling or substantial weight, or weigh it against other consistent, supportive evidence."[45]  As such, the ALJ was not required to state specifically the weight given to Dr. Clunn's opinion because the ALJ's RFC analysis was not inconsistent with the totality of the medical records of Dr. Clunn and was not inconsistent with the other medical evidence of record.

In a last ditch effort to attempt to create an issue Plaintiff suggests that the ALJ erred because the ALJ's RFC is inconsistent with Dr. Clunn's opinion that Plaintiff "must walk around every 60 minutes for approximately 5 minutes." According to Plaintiff, these breaks would amount to "at least 45 minutes of break time" in an eight hour day. Plaintiff asserts (without any basis or citation) that "allowable breaks are, at best, 10 minutes twice a day." This argument fails for two fundamental reasons.

First, Dr. Clunn simply noted in the medical source statement that Plaintiff would need to walk around from "0-5" minutes every 60 minutes. This means that Plaintiff

---

[44] Norris v. Barnhart, 2006 WL 2733607 (10th Cir. 2006).

[45] Norris at *2.

would need to take a break every hour, and not, as Plaintiff suggests, that Plaintiff would be required to take 45 minutes of breaks a day.

Secondly, and more fundamentally, an RFC at the sedentary level does not preclude a claimant from taking breaks from sitting, even if the breaks are for a few minutes every hour.  The Plaintiff cites no authority - and the Court is not aware of any - that precludes sedentary work simply because a claimant must take breaks from sitting every hour for a few minutes.

## **RECOMMENDATION**

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED.**

**IN CHAMBERS** in Ocala, Florida, on February 5, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
> The Honorable Wm. Terrell Hodges
> Senior United States District Judge
>
> Counsel of Record